Cratsley, J.
Plaintiff Stewart Title Guaranty Company, Inc. (Stewart Title) alleges negligent certification of title and related claims and seeks to recover damages, costs, and attorneys fees from defendants Stephen C. Jones (Jones) and Jones, Houlihan, and Hilton, P.C., formerly known as Law Offices of Stephen C. Jones, P.C. Jones certified that property on which Stewart Title’s insured, Cape Cod Bank and Trust Company (CCBTC), held a mortgage was free of material encumbrances, failing to notify Stewart Title or CCBTC of a prior mortgage held by Connecticut National Bank (CNB). Stewart’s motion for summary judgment shall be allowed.
BACKGROUND
The following facts are taken from admissions, affidavits and excerpts from a deposition, all filed by Stewart Title in support of its motion for summary judgment. The defendants have set forth no specific facts in opposition to Stewart Title’s motion.
Jones is a lawyer admitted to practice in Massachusetts. In 1988 and 1989, Jones was employed by, and president of, the Law Offices of Stephen C. Jones, P.C. Subsequently, the Law Offices of Stephen C. Jones, P.C. name was amended to become Jones, Houlihan, and Hilton, P.C.
Stewart Title is a title insurance underwriter. In August 1988 Jones executed a retainer agreement whereby Jones became Stewart Title’s agent for the purpose of issuing title insurance policies based upon examinations of title by Jones on Stewart Title’s behalf. The retainer agreement provides that the legal relationship between Jones and Stewart Title is that of attorney and client.
*407 On February 6, 1989, Jeffrey A. Sollows (Sollows) granted to CNB a mortgage in the amount of $1.5 million on property located in Barnstable County. Among the parcels subject to the CNB mortgage were lots 12,15, and 18 as shown on a plan of land recorded in the Barnstable County Registry of Deeds in Plan Book 426, pages 66, 67, and 68 (the property). The CNB mortgage was duly recorded on February 13, 1989.
Around the same time, Jones represented Sollows and CCBTC in connection with a $475,000 loan from CCBTC to Sollows. As security for the CCBTC loan, Sollows agreed to grant to CCBTC a first mortgage on the property. Jones understood that CCBTC was to receive a first mortgage and he prepared the promissory note, mortgage, title policy, and title certification for this transaction.
On March 1, 1989, Jones reviewed the property’s title at the Barnstable County Registry of Deeds. As to the CNB mortgage, Jones “didn’t see it, or . . . saw it and didn’t think it applied. Or sawit, thought it applied but that it was subordinated.” Jones executed an “Attorney’s Certification of Title” in which he certified that Sollows “at the time of the recording of the mortgage [held] good, clear, marketable title of record to the property, free from all encumbrances which would materially affect the title ...” The certification also provided: “Any prior or outstanding mortgages of record will be discharged or partially released.” Jones recorded the $475,000 CCBTC mortgage and issued to CCBTC a Stewart Title insurance policy (title policy) on March 1, 1989. Neither the certification nor the title policy made any reference to the CNB mortgage. Jones did not inform CCBTC or Stewart Title of any prior mortgages on the property.
Stewart Title underwrote the title policy in reliance on Jones’s examination and certification of title. Had Stewart Title known of the CNB mortgage, Stewart Title would have declined to underwrite the title policy or would have required that the CNB mortgage be listed as an exception to coverage.
Until November of 1989, when CCBTC prepared to foreclose on the property, neither CCBTC nor Stewart Title knew that CNB held a first mortgage on the property. At that time, CNB was under no obligation to subordinate or partially discharge its mortgage. CNB had entered into no oral or written agreement allowing subordination of its mortgage to that of CCBTC nor does the CNB mortgage provide for partial discharge when the mortgagor is in default, as Sollows was.
On May 1, 1990, after CNB commenced foreclosure proceedings on the property, Stewart Title paid CCBTC $385,000 in settlement of CCBTC’s claim under the title policy. In exchange, CCBTC assigned to Stewart Title its mortgage on the property and the promissory note from Sollows. Subsequently, the CCBTC mortgage was extinguished by CNB’s foreclosure. According to the terms of the title policy, Stewart Title is subrogated to CCBTC’s rights against the defendants.
Stewart Title’s complaint alleges breaches of contract and warranty (Counts I and II); negligence and gross negligence (Count III); malpractice (Count IV); negligent misrepresentation (CountV); breach of fiduciary duty (Count VI); and violation of G.L.c. 93A (Count VII). The complaint also asserts that Sollows’s promissory note, now held by Stewart Title, is uncollected and uncollectible. Stewart Title seeks to recover $385,000 plus costs and attorneys fees.
All parties have waived their rights to trial by jury. See Mass.R.Civ.P. 38(d).
DISCUSSION
Summary judgment shall be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Id. ”[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
The defendants argue that Stewart Title has not affirmatively demonstrated the absence of a triable issue because expert testimony is required to determine what duty was owed by Jones and whether Jones’s conduct breached that duty. Maintaining that Stewart Title has not met its initial burden on summary judgment, the defendants allege no specific facts in their opposition to that motion. See Mass.R.Civ.P. 56(e). As discussed below, the court finds that Stewart Title has met its burden as the moving party, establishing that there are no genuine issues of material fact and that Stewart Title is entitled to judgment as a matter of law.
Legal Malpractice
An attorney “owes his client an obligation to exercise a reasonable degree of care and skill in the performance of his legal duties.” Glidden v. Terranova, 12 Mass.App.Ct. 597, 598 (1981). Generally, expert testimony is necessary to establish the standard of care owed by an attorney in the particular circumstances and to determine whether the attorney’s conduct has met that standard. Pongonis v. Saab, 396 Mass. 1005, 1005 (1985); Glidden, supra at 598. *408 However, expert testimony is not required when the alleged malpractice is “so gross or obvious that laymen can rely on their common knowledge or experience to recognize or infer negligence from the facts." Id. Moreover, when negligent certification of title is alleged and the parties proceed jury-waived as here, reliance by the court on case law and legal commentary to determine the applicable standard of care is appropriate. Fall River Sav. Bank v. Callahan, 18 Mass.App.Ct. 76, 83 (1984), rev. denied, 392 Mass. 1103 (1984). Where, as in examination and certification of title, decisions and commentary establish a standard of lawyers’ practice, the questions of duty and breach of duty become more of law than fact. Id. (citing Prosser, Law of Torts 206 (4th ed. 1971)).
When examining and certifying title, an attorney has a duty to proceed with caution and precision. See id. (citing Mallen & Levit, Legal Malpractice §606 at 765 (2d ed. 1981)). At the time Jones reviewed and certified title, a lien that materially affected title to the property was in place. It is undisputed that the CNB mortgage was recorded earlier in time than the CCBTC mortgage and that no subordination or discharge of the CNB mortgage was secured. Therefore, Jones had a duty to notify CCBTC and Stewart Title of the existence of the CNB mortgage. See id; R.B. Tyler, Pitfalls in Title Examinations, 35 Mass. L.Q. (No. 3) 21, 25 (1950); Handling the Non-medical Professional Malpractice Case, 124 (M.C.L.E. 1989).
By failing to notify CCBTC or Stewart Title of the CNB mortgage, Jones breached his duty to exercise reasonable care and skill. See Republic Oil Corp. v. Danziger, 9 Mass.App.Ct. 858, 859 (1980) (summary judgment for plaintiff alleging negligent certification of title when defendant lawyer failed to notify plaintiff of lien on property); Fall River Sav. Bank, supra at 84 (judgment for plaintiffs alleging negligent certification of title when defendant lawyer failed to notify plaintiffs of potential tax liens).
In addition to showing breach of duty, a plaintiff in a malpractice action has the burden to prove that it incurred a loss and that the alleged malpractice was the proximate cause of that loss. DiPiero v. Goodman, 14 Mass.App.Ct. 929, 929 (1982). Loss need not be specifically proven, however, to establish liability in an action for legal malpractice. Once a breach is shown, the element of actual loss is satisfied because the essence of an action for legal malpractice, “regardless of its form, is the attorney’s breach of contract . . . [and] ... [a] breach of contract carries with it at least nominal damages." As to causation, the undisputed facts show that Stewart Title’s loss would not have been incurred had Jones notified Stewart Title and CCBTC of the CNB mortgage.
Negligent Misrepresentation and General Laws Chapter 93A
By certifying that title to the property was good and marketable, Jones misrepresented that the title was “free from encumbrances beyond a reasonable doubt.” Guleserian v. Pilgrim Trust Co., 331 Mass. 431, 435 (1954). Jones, in the course of his employment, supplied false information for the guidance of CCBTC and Stewart Title in their business transactions. CCBTC and Stewart Title reasonably relied, to their detriment, on that information which Jones had failed to exercise reasonable care or competence in obtaining. Therefore, the defendants are liable for negligent misrepresentation. See Robertson v. Gaston Snow & Bartlett, 404 Mass. 515, 523 (1989); Lawton v. Dracousis, 14 Mass.App.Ct. 164, 171 (1982), rev. denied, 387 Mass. 1103 (1982).
Because “a negligent misrepresentation of fact the truth of which is reasonably capable of ascertainment is an unfair and deceptive act or practice within the meaning of c. 93A, §2(a),” the defendants are also liable under G.L.c. 93A, §11. See Glickman v. Brown, 21 Mass.App.Ct. 229, 235 (1985), rev. denied, 396 Mass. 1106 (1985). “While it is not a defense to a c. 93A claim that the defendant’s conduct was negligent rather than intentional, negligence does not give rise to a multiple damages claim under §11.”[2] Linthicum v. Archambault, 379 Mass. 381, 388 (1979). Chapter 93A does, however, impose on the defendants liability for Stewart Title’s attorneys fees and costs. See G.L.c. 93A, §11.
The doctrine of respondeat superior imposes vicarious liability on the corporate defendant, Jones, Houlihan, and Hilton, P.C., formerly known as Law Offices of Stephen C. Jones, P.C., because it is undisputed that Jones acted within the scope of his employment when he negligently certified title. See Wang Laboratories, Inc. v. Business Incentives, Inc., 398 Mass. 854, 859 (1956).
Summary judgment shall be allowed on the basis of the defendants’ liability under counts IV, V, and VII. The remaining counts are duplicative and, therefore, moot. Because Stewart Title holds Sollows’s promissory note, genuine issues remain as to the amount of Stewart Title’s actual damages. A hearing shall be scheduled so that this court may assess damages, attorneys fees, and costs.
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiffs motion for summary judgment be ALLOWED. It is further ORDERED that a hearing shall be scheduled subsequent to which this court shall calculate damages, attorneys fees, and costs.

 Stewart does not seek double or treble damages.