WANG LABORATORIES, INC. vs. BUSINESS INCENTIVES, INC.[1]

Middlesex.    September 8, 1986. — December 30, 1986.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Contract,* Performance and breach. *Consumer Protection Act,* Unfair act
or practice, Multiple damages, Responsibility of employer. *Agency,*
Scope of authority or employment.

On a claim for breach of contract and violation of the Consumer Protection
Act, the judge erred in refusing to award a tax consultant multiple
damages on the basis of a conclusion that the conduct of a manufacturing
corporation's executives who terminated the consultant's contract in
reliance on inadequate and erroneous information supplied by an em-
ployee of the corporation was only negligent, rather than wilful, where
the judge's findings, supported by the evidence, required the legal con-
clusion that the wilful conduct of the corporation's employee was within
the scope of his employment and was, therefore, attributable to the
corporation. [858-861]

CIVIL ACTION commenced in the Lowell Division of the
District Court Department on March 24, 1981.

Upon removal to the Superior Court Department, the case
was heard by *Mel L. Greenberg, J.*

The Supreme Judicial Court granted a request for direct
appellate review.

*Wayne H. Scott (John M. Lynch* with him) for Business
Incentives, Inc.

*Richard K. Donahue* for Wang Laboratories, Inc.

[1] The pleadings name Dudley L. Post, d/b/a Business Incentives, as well
as Business Incentives, Inc., as defendants and plaintiffs in counterclaim.
This appeal involves only the counterclaim. The judgments entered on the
several counts of the counterclaim refer only to Business Incentives, Inc.,
as the plaintiff in counterclaim, and on appeal the parties treat Business
Incentives, Inc., as the sole plaintiff in counterclaim. We do so as well,
and consider Business Incentives, Inc., as the owner of any rights Post may
have against Wang Laboratories, Inc.

O'CONNOR, J. This is an appeal by Business Incentives, Inc. (BI), from judgments awarding it contract damages and attorneys' fees on its counterclaim but denying it multiple damages under G. L. c. 93A, § 11 (1984 ed.). We allowed BI's application for direct appellate review. We reverse the judgment entered on Count VII, and remand the case to the Superior Court for further proceedings.

Wang Laboratories, Inc. (Wang), began this action in the District Court to recover for alleged violations of contract and G. L. c. 93A (1984 ed.). BI removed the case to the Superior Court, answered the complaint, and counterclaimed in seven counts for alleged violations of contract and of G. L. c. 93A, §§ 2 and 11. The matter was tried in the Superior Court by a judge without a jury. The judge denied recovery to Wang, found for Wang on Counts IV, V, and VI of BI's counterclaim, and awarded single contract damages to BI on Counts I, II, III, and VII of its counterclaim. He awarded attorneys' fees to BI. Counts I, II and III of the counterclaim allege Wang's failure to pay BI at the contract rate for services performed in fiscal 1977, 1979, and 1980. Count VII alleges that Wang unlawfully terminated the contract in 1981, thus depriving BI of commissions it would have earned under the contract for fiscal 1981 and 1982. BI appeals from the judge's failure to award it multiple damages under c. 93A, § 11. BI's argument on appeal properly focuses on its perceived entitlement to multiple damages on Count VII of its counterclaim.

The judge found the following facts. In 1977, Wang and Dudley L. Post, whose business was subsequently incorporated as Business Incentives, Inc., entered into a contract in which Post agreed to help Wang obtain tax benefits through Wang's participation in certain tax incentive programs in which it had not previously participated. The contract provided that Post would identify Wang's eligibility for the benefits, collect the information necessary to establish eligibility, apply to the appropriate governmental agencies for the required certifications, perform the necessary calculations, and execute the appropriate forms. Post's compensation was agreed to be one third of Wang's resulting tax savings, payable when the tax returns

were filed. The contract, which did not contain a termination clause, extended through 1983.

Post performed as agreed, and in 1977 he generated $137,774 in tax savings for Wang. He submitted a bill for $45,925, but he and Wang agreed that half of that amount would be set aside in case part or all of the tax savings subsequently should be disallowed after audit. Although none of the savings were disallowed after audit, Wang did not pay the remaining half of the fee.

In early 1978, Wang hired Lawrence Joseph as a junior manager to conduct its in-house tax affairs. He reported to David Hennessey, Wang's international manager, but he essentially operated as a one-person tax department. Joseph and Post dealt closely with each other, and Post submitted his written work to Joseph. Post's work generated tax savings for Wang for fiscal 1978 in the sum of $292,926, and Wang paid Post his agreed one third fee.

In early 1979, Joseph obtained a copy of Post's contract with Wang, and he commented in a memorandum that, because of Wang's expansion between 1977 and 1979, the contract would encompass at least nine more facilities than it encompassed when it was first executed. In a later memorandum to international manager Hennessey, to director and vice president of personnel Theda McGrath, to general counsel Edward Grayson, and to treasurer Harry Chou, Joseph said, "If it is found that the credit will *not* yield a substantial savings to Wang, it is our opinion that Dudley should still be retained through 1983. However, if it [is] found that there will be a substantial savings, Wang will either terminate his contract or attempt to place a cap on the fee paid to him as we want to avoid a situation similar to this year where the effort put forth is not commensurate with savings generated. We [Joseph and Grayson] plan to meet sometime next week to make a final decision on his future relations with Wang." (Emphasis in original.)

As a result of Joseph's activity concerning Post's contract with Wang, Joseph and Grayson met with Post in May, 1979, and negotiated an amendment to the contract which limited it

to four facilities. Post generated tax savings for Wang for fiscal 1979 in the sum of $311,269. He submitted a bill for $103,756, which was never paid.

In 1979, Wang hired Eugene Bullis as supervising comptroller and Michael Fox as manager of corporate taxation. Fox became Joseph's immediate supervisor. In April, 1980, Joseph circulated a memorandum to Bullis and Fox. In addition to criticizing Post's performance under his contract, the substance of the memorandum was that Post's services could be performed in-house, and that Post's fees could be eliminated. In reference to the 1979 amendment to Post's contract, Joseph wrote: "It should be noted that the decision to attempt to have Dudley's contract cancelled was at the time due solely to the fact that his 1978 fee was $97,000, and it was felt that the fee would become even larger in future years based on our interpretation of the law. . . . Furthermore, both Mike Fox and I feel that Wang has the capabilities and the personnel to handle adequately the work necessary in order to generate these credits on their own."

Grayson, Chou, and Fox began a course of discussions which did not include Post and which assumed the truth of Joseph's contentions concerning all aspects of Post's work. Post continued to perform his services under the contract and submitted savings to Wang of $642,516 for fiscal year 1980, billing for a one-third fee of $214,172. Wang did not pay any portion of this fee. Eventually, Bullis and Grayson authorized Fox to negotiate a "buy out" of Post's contract. When it became clear that that could not be accomplished, Wang terminated Post's contract and commenced the present action.

The judge further found as follows: "Joseph's conduct in insinuating that Post was not utilizing the programs to Wang's full benefit was not advanced in good faith. It is clear to me that his alliance with Post was broken with an intent to advance his own interests within the corporation. His interference constituted a wilful act calculated to obtain the benefits of Post's contract for Wang without cost and in disregard of known contractual arrangements. . . . Although the focus is not upon Joseph's wrongful interference with Post's relationship with

Wang in this case, it is germane insofar as Wang remains respondeat superior for the actions it undertook to cause the wrongful breach of the agreement." The judge then found that the Wang executives who terminated Post's contract in reliance on the inadequate and erroneous information supplied by Joseph were guilty of an unfair practice which was chargeable to Wang. However, he also found that, since the executives' conduct was only negligent rather than wilful, multiple recovery under G. L. c. 93A, § 11, was unavailable.[2]

General Laws c. 93A, § 2 (*a*), provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Chapter 93A, § 11, provides in pertinent part: "Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, . . . as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two . . . may . . . bring an action in the superior court, . . . whether by way of original complaint, counterclaim, cross-claim or third-party action for damages.

"If the court finds for the petitioner, recovery shall be in the amount of actual damages; or up to three, but not less than two, times such amount if the court finds that the use or employment of the method of competition or the act or practice was a willful or knowing violation of said section two."

Multiple damages are unwarranted if, as the judge concluded, "the focus is not upon Joseph's wrongful interference with Post's relationship with Wang in this case," but instead is only on the termination of Post's contract by executives who negligently relied on the misinformation given them by Joseph. A negligent unfair act or practice does not qualify for multiple damages. But the focus in this case should not be solely on the conduct of Wang's executives. It should be on the conduct

---

[2] The judge did not find that Wang's contract violations alleged in Counts I, II, and III of the counterclaim were unfair practices, or that they were caused by Joseph's conduct. The judge related Joseph's conduct only to the unlawful termination of the contract.

of Joseph as well. Joseph's acts took place in a commercial setting. They were unfair to Post and BI within the prohibitions of G. L. c. 93A, §§ 2 and 11, see *PMP Assocs.* v. *Globe Newspaper Co.,* 366 Mass. 593, 595-596 (1975); they were wilful violations of § 2, and they clearly contributed to cause the termination of Post's contract and Post's resulting losses, see *Trustees of Forbes Library* v. *Labor Relations Comm'n,* 384 Mass. 559, 569-570 (1981). Wang does not contend otherwise. The only question, then, is whether Wang is responsible for Joseph's wilful unfair acts. Wang argues that it is not responsible because the judge explicitly and implicitly found on adequate evidence that Joseph's unfair acts were not performed within the scope of his employment.

We agree that Wang cannot be held liable under G. L. c. 93A for the conduct of an employee acting outside the scope of his employment. But, we are not persuaded that the judge found explicitly or implicitly that Joseph's conduct was not within the scope of his employment. On the contrary, we are satisfied that the judge's explicit findings, warranted by the evidence, require the legal conclusion that Joseph's conduct leading to the termination of Post's contract was within the scope of his employment and was, therefore, Wang's conduct.

To determine whether an employee's conduct is within the scope of his employment for purposes of employer liability under G. L. c. 93A, we may appropriately be guided by a consideration of the factors relevant to scope of employment determinations bearing on the imposition of vicarious liability on employers for the tortious conduct of their employees. In that context, conduct of an agent is within the scope of employment if it is of the kind he is employed to perform, *Douglas* v. *Holyoke Mach. Co.,* 233 Mass. 573, 576 (1919); if it occurs substantially within the authorized time and space limits, *Vallavanti* v. *Armour & Co.,* 260 Mass. 417, 419-420 (1927); and if it is motivated, at least in part, by a purpose to serve the employer, *Donahue* v. *Vorenberg,* 227 Mass. 1, 5 (1917); *McKeever* v. *Ratcliffe,* 218 Mass. 17, 20 (1914). See Restatement (Second) of Agency § 228 (1958). The fact that the predominant motive of the agent is to benefit himself does not

prevent the act from coming within the scope of employment as long as the act is otherwise within the purview of his authority. Restatement (Second) of Agency § 236 comment b (1958). See *United States* v. *Cincotta,* 689 F.2d 238, 241-242 (1st Cir.), cert. denied sub nom. *Zero* v. *United States,* 459 U.S. 991 (1982).

There can be no serious claim that Joseph's conduct leading to the termination of Post's contract was not the kind of conduct he was employed to perform. Wang directs our attention to the judge's finding that "Joseph was not directed by anyone at Wang to review Post's work under the contract but [Joseph] 'just sort of moved out and . . . got involved on his own.' " But the judge found on adequate evidence that Joseph was employed to conduct Wang's in-house tax affairs, and for a while, at least, he operated a one-man tax department. Post submitted his written work to Joseph, and Joseph's appraisals of Post's services and his involvement with Post's contract were repeatedly endorsed and utilized by Wang's executives. These findings establish that Joseph's conduct was the kind of conduct he was employed to perform and that it occurred within the authorized limits of time and space. Therefore, Joseph's conduct was within the scope of his employment if it was motivated, at least in part, by a desire to serve Wang's interests. It is to that question that Wang directs its primary argument.

It is true, as Wang points out, that the judge found that Joseph's "alliance with Post was broken with an intent to advance his own interests within the corporation." If that finding stood alone, it might well defeat the proposition that Joseph's acts were in the course of his employment. However, that statement in the judge's memorandum of findings is immediately followed by the statement that "[Joseph's] interference constituted a wilful act calculated to obtain the benefits of Post's contract for Wang without cost and in disregard of known contractual arrangements." The judge's findings are clear, therefore, that although Joseph was motivated by self-interest, he acted with an intent to serve Wang. As a result, our case law compels the conclusion that Joseph's participation in the termination of Post's contract was within the scope of his

employment, that Wang is legally responsible for the losses incurred by Post and BI as a result of the contract's being terminated, and that Wang is required by G. L. c. 93A, § 11, to pay BI multiple damages. Accordingly, we reverse the judgment below on Count VII and remand this case to the Superior Court for the assessment of up to three, but not less than two, times the amount of BI's actual damages resulting from Wang's termination of Post's contract.[3]

*So ordered.*

---

[3] In view of our disposition of this case, we need not address the motion of BI and Post under Mass. R. Civ. P. 60 (a), 365 Mass. 828 (1974), for leave to correct a clerical mistake in the order for judgment and the judgment entered below.