KEVIN J. KELLY & another[1] vs. MIDDLESEX CORPORATION.

No. 91-P-1213.

Worcester. January 11, 1993. - July 23, 1993.

Present: PERRETTA, KASS & LAURENCE, JJ.

*Agency*, Scope of authority or employment. *Negligence*, Motor vehicle.

In the case of a State trooper injured when struck by a motor vehicle being
    negligently operated by a construction worker, who was enroute to his
    job site solely to obtain his paycheck on a day when the employer had
    canceled work on the site, there was no evidence from which the jury
    could reasonably conclude that the employer's purposes had impelled
    the worker's travel so as to render the employer vicariously liable on the
    theory of respondeat superior. [32-35]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 13, 1990.

The case was tried before *John C. Cratsley*, J.

*Philip J. MacCarthy* for the defendant.

*John F. Keenan* for the plaintiffs.

KASS, J. At around 3:00 P.M. on August 11, 1989, the
plaintiff Kevin J. Kelly, a State trooper, was writing out a
ticket to a motorist whom he had stopped for speeding in
Marlborough. Kelly's police cruiser and the motorist's car
were stopped in the southbound breakdown lane of highway
Route 495. As Kelly was returning to his cruiser a south-
bound vehicle driven by Sergio Peluffo unaccountably veered
to the right off the road and struck the unfortunate State
trooper. Peluffo, it turned out, had fallen asleep at the wheel.

The ensuing action by which Kelly sought compensation
for his injuries resulted in an aggregate jury verdict of

---

[1]Sandra M. Kelly, his wife.

$2,000,000[2] against Peluffo and his employer, Middlesex Corporation (Middlesex).[3] Peluffo was driving from his home in Leominster to Attleboro to pick up a paycheck when the accident occurred. At the close of the plaintiffs' evidence and at the close of all the evidence, Middlesex moved for a directed verdict, and its motion in each instance was denied. See Mass.R.Civ.P. 50(a), 365 Mass. 814 (1974). A timely motion for judgment notwithstanding the verdict (see Mass.R.Civ.P. 50[b], 365 Mass. 814 [1974]) was also denied. We think the evidence cannot support a finding by the jury that Peluffo was acting within the scope of his employment by Middlesex when the accident happened; the motion for judgment notwithstanding the verdict should have been allowed; and we reverse the judgment against Middlesex.[4]

The day of the accident was a Friday. Peluffo had arrived at the job site in Attleboro around 7:00 A.M., but rain had begun to fall. Approximately at 9:00 A.M., Peter J. McLellan, Middlesex's job superintendent, shut the job down for the balance of the day and sent the work force home. Paychecks were not yet available. They were normally delivered to the Attleboro job site at about 3 to 3:30 P.M. on Fridays. McLellan told the workers who were leaving that they could, if they wished, pick up their checks at the trailer office on the job site at the usual midafternoon time or receive them when they came to work the following Monday. Peluffo went home to Leominster and had some repair work done on his car. He decided to pick up his paycheck so that he could pay some bills, and it was on the trip back to Att-

---

[2]A sum of $1,700,000 for Kevin J. Kelly and $300,000 for Sandra M. Kelly, whose claim was for loss of consortium.

[3]A third defendant was the motorist who had been stopped for speeding. The complaint against him was dismissed on a motion for a directed verdict.

[4]In denying the motion for a directed verdict and letting the jury have the case, the trial judge followed the procedure recommended in cases such as *Smith* v. *Ariens Co.*, 375 Mass. 620, 627-628 (1978), and *Fahey* v. *Rockwell Graphic Sys., Inc.*, 20 Mass. App. Ct. 642, 643 n. 4 (1985), for occasions when the judge thinks it a close question whether the jury should get the case.

leboro that the accident involving the plaintiff Kelly occurred.

In order to recover from Middlesex on the basis of vicarious liability established through the idea of respondeat superior, it was the plaintiff's burden to prove that Peluffo was acting on behalf of or upon the direction of his employer, Middlesex, when the accident occurred, i.e., that he was acting in the scope of his employment.[5] See *Wang Labs., Inc.* v. *Business Incentives, Inc.*, 398 Mass. 854, 859 (1986). An employee's tortious conduct may come under the "scope of employment" umbrella if the employee's tortious activity is driven, at least in part, by a purpose to serve the employer. *Ibid.* See also *Pinshaw* v. *Metropolitan Dist. Commn.*, 402 Mass. 687, 694 (1988); Restatement (Second) of Agency § 228 (1958). If the employee's acts are driven by purely personal purposes, unconnected in any way with the employer's interests, then the employee is ordinarily acting outside the scope of his employment. *Pinshaw* v. *Metropolitan Dist. Commn.*, *supra* at 694-695. Prosser & Keeton, Torts 506 (5th ed. 1984).

It has long been settled — as the plaintiff recognizes — that travel back and forth from home to a fixed place of employment is not ordinarily regarded as incident to employment and the employer is not answerable for an employee's torts in the course of such activity. *Chernick's Case*, 286 Mass. 168, 172 (1934). *Smith's Case*, 326 Mass. 160, 162 (1950). *Gwaltney's Case*, 355 Mass. 333, 335 (1969). This is the "coming and going" rule. See *Wormstead* v. *Town Manager of Saugus*, 366 Mass. 659, 666 (1975). The limiting case occurs when the purpose of travel between the place of residence and place of business is a mission to further the purposes of the employer, such as when an employee is directed to come to a particular company meeting, as in

---

[5]There is no substance to the plaintiff's point that the issue of scope of employment was not raised at trial. Contrast *Uloth* v. *City Tank Corp.*, 376 Mass. 874, 883 (1978). The grounds raised on the motion — no master/servant relationship, not subject to employer's control, and not subject to employer's direction — added up to whether Peluffo was acting within the scope of his employment.

*Caron's Case*, 351 Mass. 406, 409-410 (1966). See also *Wormstead* v. *Town Manager of Saugus, supra* at 666, involving a police officer travelling during his duty hours to his home for lunch; and *Swasey's Case*, 8 Mass. App. Ct. 489, 493-494 (1979), where the nature of the employment involved dispatching the employee to distant places, in that instance to Poughkeepsie, New York.

With those principles in mind, we consider whether, without weighing the credibility of the witnesses or the weight of the evidence, there was evidence from which the jury could reasonably draw the inference that, at the time of the accident, the employer's purposes had impelled Peluffo's travel. *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978). *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, 408 Mass. 704, 706 n. 3 (1990). *Rubel* v. *Hayden, Harding & Buchanan, Inc.*, 15 Mass. App. Ct. 252, 254 (1983). *International Totalizing Sys., Inc.* v. *PepsiCo, Inc.*, 29 Mass. App. Ct. 424, 429 (1990).

McClellan, the job superintendent, had testified that he told his men when he sent them home that if they wanted their paychecks they could come back and get them at around 3 P.M. or receive them on Monday when they were back on the job. Peluffo's testimony at trial was consistent, i.e., he said that he had the option to come back for his check or wait until Monday. What the plaintiff relies on as evidence that Peluffo was directed to return for his check is a portion of testimony Peluffo gave at a pretrial deposition, which was read into the record. In the first of the extracts which we reproduce, the questioner is the plaintiff's lawyer, Mr. Keenan:

Q: "And were you then told by one of your bosses to go home?"

A: "Yeah, I go back and pick up my check, that's what he told me."

Q: "Were you told to come back to get your check?"

A: "Yeah."

Q: "Who told you to come back and get your check?"

A: "Peter [McClellan]. . . ."

Q:  "And what did he tell you?"
A:  "I had to come by later to pick up my check. This
is what he told me. If I wanted my check I had to
. go later."

In isolation, the excerpted deposition testimony could pos-
sibly be stretched to a direction to Peluffo to return for his
check. Peluffo, who lacked English language skills (he was a
native of Uruguay), was not asked by plaintiff's counsel
whether he was given the alternative of picking up his check
on the next work day, Monday. Later in the deposition, how-
ever, he was asked that follow-up question by one of the de-
fense lawyers:

Q:  "On this particular day they closed the job down?"
A:  "Yeah."
Q:  "In the morning?"
A:  "Yeah."
Q:  "And if you wanted your money that day, you were
to come back for it?"
A:  "Yeah."
Q:  "And if you wanted to wait, you could pick it up
on Monday?"
A:  "Yeah."
Q:  "And you decided you wanted your money, so you
came back for it?"
A:  "Yeah."

This second extract, which was also read to the jury, does
not contradict the first; it fills it out. When the second quoted
portion of the deposition is included, there is no inconsistency
between Peluffo's trial testimony, that he had a choice of
picking up his check on Friday or Monday, and his deposi-
tion testimony. A jury could not reasonably conclude from
his entire testimony that Middlesex instructed Peluffo to
make a special trip for his check on Friday and, thus, im-
pelled his travel. Middlesex no doubt had a duty under G. L.
c. 149, § 158, to make a paycheck available to its weekly
wage earners on Friday, but it was not in derogation of any

interest of Middlesex if a worker chose to pick up a check the following Monday.

To the voluntary nature of Peluffo's travel certain additional factors may be considered as bearing on whether Peluffo, at the time of the accident, was engaged in his own business or in his employer's. Peluffo at the time of the accident was off duty with Middlesex; he was not being paid; he was driving his own vehicle without mileage allowance from Middlesex; he was not on call to be back at work in the event the weather changed for the better or to perform other duties. As Peluffo's conduct at the time of the accident was independent of the requirements or interests of his employer, Middlesex was entitled to allowance of its motion for judgment notwithstanding the verdict.

*Judgment reversed.*
*Judgment for the defendant*
*Middlesex Corporation.*