# United States Court of Appeals
## For the First Circuit

No. 09-2387

FRANK A. MERLONGHI,

Plaintiff, Appellant,

v.

UNITED STATES,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Boudin, Gajarsa,* and Thompson, Circuit Judges.

Benjamin R. Zimmermann, with whom Neil Sugarman and Sarah H. Gottlieb were on brief, for plaintiff, appellant.

Anita Johnson, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for defendant, appellee.

September 14, 2010

---

\* Of the Federal Circuit, sitting by designation.

**GAJARSA**, **Circuit Judge**. This appeal requires us to determine whether a federal employee was acting within the scope of his employment under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680 (2006). While driving home from work in a government vehicle, the employee collided with a motorcyclist. The motorcyclist, Frank A. Merlonghi, filed suit in the U.S. District Court for the District of Massachusetts against the United States under the FTCA for the actions of the employee, U.S. Special Agent Thomas Porro. The district court dismissed Mr. Merlonghi's claim for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because it determined that Mr. Porro was not acting within the scope of his employment at the time of the collision. We affirm.

## I.

Mr. Porro was a Special Agent stationed in Boston, Massachusetts at the Office of Export Enforcement ("OEE") of the U.S. Department of Commerce. He aided in criminal investigations and specialized in computer forensics. OEE authorized its special agents, including Mr. Porro, to drive government vehicles between work and home so that they would be available twenty-four hours a day for emergencies. This enabled special agents to leave directly from home to an investigation site or other work assignment.

On March 29, 2006, Mr. Porro was driving home from work in an unmarked government vehicle. At approximately 6:30 p.m., he

was driving his vehicle east on Congress Street. When Mr. Porro turned right on Dorchester Avenue, his vehicle nearly collided with a motorcycle driven by Mr. Merlonghi's friend, Bartley Loftus. Mr. Merlonghi drove up in his motorcycle alongside Mr. Porro's vehicle and claims to have said, "Hey Pal, you almost hit my buddy." App. 116. In contrast, Mr. Porro testified that Mr. Merlonghi said, "You're a f---ing a--hole. I ought to put a bullet in your head." App. 147. In response, Mr. Porro reportedly said, "F-you. He cut me off." App. 116.

Mr. Porro then drove away, but Mr. Merlonghi followed on his motorcycle, yelling and screaming. After another verbal exchange, Messrs. Porro, Merlonghi, and Loftus turned left from Dorchester Avenue onto Summer Street directly into rush hour traffic. On Summer Street, Messrs. Porro and Merlonghi swerved their vehicles back and forth towards each other.

At some point on Summer Street, Mr. Porro took out his revolver. Mr. Merlonghi testified that Mr. Porro pointed the gun at him. In contrast, Mr. Porro testified that he merely unholstered his gun and placed it on the passenger's seat beside him. Mr. Porro explained that he displayed his weapon because he "wanted to see if [Mr. Merlonghi] had any intention or ability to carry through the threat that he had just made." App. 149. Upon seeing the gun, Mr. Merlonghi shouted to Mr. Porro, "What are you going to do, shoot me?" App. 123. Messrs. Porro and Merlonghi

-3-

then continued driving along Summer Street, swerving back and forth, arguing with each other.

While still on Summer Street, Mr. Merlonghi drove alongside Mr. Porro. Near the intersection of Summer Street and D Street, multiple witnesses testified that Mr. Porro's vehicle suddenly swerved hard to the left toward Mr. Merlonghi's motorcycle. In the words of one witness, Mr. Porro's vehicle made a "very hard, fast motion to the left." App. 44. In contrast, Mr. Porro claimed that he thought he saw Mr. Merlonghi's motorcycle fall behind through his rearview mirror and that he merged quickly into the left lane to avoid a right-turn-only lane. Both parties agree, however, that when Mr. Porro entered the left lane, his vehicle struck Mr. Merlonghi's motorcycle, throwing him to the ground. Instead of stopping, Mr. Porro straightened out his damaged vehicle and sped away. As a result of the collision, Mr. Merlonghi suffered serious bodily injuries.

After the accident, Mr. Porro failed to contact his office or the police. He personally paid to repair the vehicle in a New Hampshire repair shop--even though OEE pays for the repair of damaged government vehicles. He later testified that he failed to report the accident to OEE because "[i]t wasn't inside the scope of my employment[;] it wasn't really a direct result." App. 162.

Subsequently, Mr. Porro was indicted under the General Laws of Massachusetts on three counts: (1) aggravated assault and

-4-

battery by means of a dangerous weapon (an automobile) in violation of chapter 265, section 15A, (2) assault by means of a dangerous weapon (a handgun) in violation of chapter 265, section 15B(b), and (3) leaving the scene of an accident causing personal injury in violation of chapter 90, section 24(2)(a 1/2)(1). See Commonwealth v. Porro, 909 N.E.2d 1184, 1186-87 (Mass. App. Ct. 2009), review granted in part, 920 N.E.2d 43 (Mass. 2009). Mr. Porro was tried before a jury on all three counts. Id. at 1186. The jury convicted him of a lesser included offense of the first count for assault by means of a dangerous weapon (an automobile) and convicted him of the third count. Id. However, the jury acquitted him of the second count. Id. On appeal, the Appeals Court of Massachusetts affirmed his conviction on the third count. Id. at 1190. But the court reversed the jury's conviction on the lesser included offense because the jury convicted him of a crime for which he was not indicted in violation of Article 12 of the Massachusetts Declaration of Rights. Id. at 1190. The Massachusetts Supreme Judicial Court ("SJC") granted Mr. Porro's subsequent appeal to determine whether he could be retried for the lesser included offense. Porro, 920 N.E.2d at 43. That appeal remains pending.

While the criminal action was proceeding, Mr. Merlonghi filed a civil complaint against the United States under the FTCA.

He claimed that Mr. Porro caused him injuries while acting within the scope of his employment.

The government moved to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. The district court granted the government's motion. Ruling from the bench, the district court held that "on the undisputed record that's before the Court, as [a] matter of law[,] Mr. Porro was not within the scope of his employment." App. 272 (Tr. 12:5-8) (alterations added). Based on Massachusetts common law, the district court found that (1) Mr. Porro "was not doing the customary duties that he was hired to perform," (2) "[i]t was not [within] an authorized time or space," and (3) "[h]e was not motivated with respect to this conduct by a purpose to serve the employer." App. 272 (Tr. 12:8-12) (alterations added). In the alternative, the district court ruled "that on the undisputed facts of this record that [Mr. Porro's] conduct went beyond mere negligence and was reckless." App. 272 (Tr. 12:13-15) (alteration added). In explanation of the alternative ruling, the district court stated, "Reckless conduct such as this can, I don't need to make a ruling like this, can make out under the laws of Massachusetts liability for the intentional tort of battery." App. 272 (Tr. 12:15-18).

Mr. Merlonghi timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

The district court dismissed Mr. Merlonghi's complaint for lack of subject-matter jurisdiction because it concluded that Mr. Porro was not acting within the scope of his employment when he collided with Mr. Merlonghi. When a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor. Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001). The district court may also "consider whatever evidence has been submitted, such as the depositions and exhibits submitted." Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996).

On appeal, we review de novo a district court's legal determination that an employee acted outside the scope of his employment and that it lacks subject-matter jurisdiction under the FTCA. McIntyre v. United States, 545 F.3d 27, 40 (1st Cir. 2008); Aversa, 99 F.3d at 1209.

The United States as a sovereign can be haled into court only if it consents to be sued. "It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" United States v. Mitchell, 445 U.S. 535, 538 (1980) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)); see

also <u>McCloskey</u> v. <u>Mueller</u>, 446 F.3d 262, 266 (1st Cir. 2006). To expose the United States to suit, Congress must "'unequivocally'" waive sovereign immunity. <u>Mitchell</u>, 445 U.S. at 538 (quoting <u>United States</u> v. <u>King</u>, 395 U.S. 1, 4 (1969)). By enacting the FTCA, Congress waived the immunity of the United States to suit for the tortious actions of federal employees.

Nevertheless, the United States' waiver of sovereign immunity under the FTCA has limits. The waiver is effective only for the acts or omissions of a federal employee within the scope of his employment. Under 28 U.S.C. § 1346(b)(1), district courts have jurisdiction over tort claims against the United States "for personal injury . . . caused by the negligent or wrongful act or omission of any employee . . . while acting within the scope of his employment, under circumstances where the United States . . . would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Consequently, "the law of the state in which the relevant conduct occurred" determines "[w]hether an employee is acting within the scope of his employment for purposes of the FTCA." <u>McIntyre</u>, 545 F.3d at 38; <u>see</u> <u>also</u> <u>Aversa</u>, 99 F.3d at 1209.

In this case, the parties agree that Massachusetts law applies. We therefore look to the SJC's decisional law on respondeat superior. "Under the doctrine of respondeat superior, 'an employer, or master, should be held vicariously liable for the

-8-

torts of its employee, or servant, committed within the scope of employment.'" Lev v. Beverly Enters.-Mass., Inc., 929 N.E.2d 303, 308 (Mass. 2010)(quoting Dias v. Brigham Med. Assocs., Inc., 780 N.E.2d 447, 449 (Mass. 2002)). In numerous opinions, the SJC has explained that Massachusetts courts are to determine whether an employee's conduct is within the scope of his employment based on (1) "whether the conduct in question is of the kind the employee is hired to perform," (2) "whether it occurs within authorized time and space limits," and (3) "whether it is motivated, at least in part, by a purpose to serve the employer." Clickner v. City of Lowell, 663 N.E.2d 852, 855 (Mass. 1996); see also Lev, 929 N.E.2d at 308 (reiterating the three-factor test for determining scope of employment); Pinshaw v. Metro. Dist. Comm'n, 524 N.E.2d 1351, 1356 (Mass. 1988) (same); Wang Labs., Inc. v. Bus. Incentives, Inc., 501 N.E.2d 1163, 1166 (Mass. 1986) (same); Restatement (Second) of Agency § 228 (1958). In addition to this three-factor test, the SJC has a long-established "going and coming" rule: "Generally speaking, travel to and from home to a place of employment is not considered to be within the scope of employment." Lev, 929 N.E.2d at 308.[2]

---

[2] In Wormstead v. Town Manager of Saugus, 322 N.E.2d 171 (Mass. 1975), the SJC established an exception to the "coming and going" rule for traveling workers. But Wormstead "involved worker's compensation analysis, not imputed tort liability under respondeat superior principles." Clickner, 663 N.E.2d at 852 n.4. As explained infra, this exception for workers' compensation cases is not applicable to this case, which is a case involving tort

-9-

Clickner is instructive of how respondeat superior and the "going and coming" rule apply in this case. In Clickner, a Lowell police officer obtained permission to drive a government vehicle to a golf tournament before his shift so that he could "respond immediately to any emergency calls without returning home." 663 N.E.2d at 854. While at the golf tournament, the officer drank at least four beers. Id. He departed from the tournament in the government vehicle approximately one half an hour before his shift began. Id. While driving to work, the officer received a page from a subordinate. Id. When he tried to respond to the page on his cellular phone, the officer drove his car over the center line and into another vehicle, injuring the passengers in the other vehicle. Id. The officer was later convicted of driving under the influence. Id.

Based on these facts, the SJC held that the officer was not acting within the scope of his employment. Id. at 855-56. As a baseline, the SJC explained that the officer, "although authorized to drive the city's automobile, was not acting in the furtherance of the employer's business simply because he was going to work." Id. at 855. It noted that under the "going and coming" rule, "[t]ravel to and from home to a place of employment generally is not considered within the scope of employment." Id.; see also

liability under respondeat superior. See Lev, 929 N.E.2d at 309 n.6.

-10-

id. at 855 n.4.  The SJC also noted that "the mere fact of being on call does not place employees within the scope of their employment."  Id. at 855.

Clickner demonstrates that when a government employee drives a government vehicle to and from work but acts "in the furtherance of his own agenda," the employee is not acting within the scope of his employment.  Id. at 856.  Applying its three-factor test, the SJC concluded that the officer was not acting within the scope of his employment because "[h]e was using the vehicle for his own purposes; he was in the town of Groton where he was not authorized to act as a police officer; his shift had not yet begun; he was not being paid at that time; and he was intoxicated and unfit for duty."  Id. at 855.  Despite the fact that the officer was driving a government vehicle and responded to a work-related page, those facts were "not enough to tip the balance to bring [the officer's] conduct within the scope of employment" when, in general, an employee is not acting within the scope of his employment when traveling to and from work.  Id. at 856.

In this case, as in Clickner, the undisputed facts establish that although Mr. Porro was driving home from work in a government vehicle, he was acting "in the furtherance of his own agenda," not within the scope of his employment.  Id. at 856.  On appeal, the parties agree that Mr. Porro was driving a government

vehicle home from work after completing his shift, that he argued with Mr. Merlonghi while driving, that he showed his gun to Mr. Merlonghi, that the two vehicles swerved back and forth,[3] and that Mr. Porro struck Mr. Merlonghi with his car. Both parties further agree that Mr. Porro drove a government vehicle so that he could travel to an assignment directly from home, but that he was not responding to an assignment from OEE when he crashed into Mr. Merlonghi's motorcycle. The parties dispute, however, whether Mr. Porro deliberately swerved into Mr. Merlonghi's motorcycle or accidentally struck Mr. Merlonghi while merging into the left lane. It does not matter whether Mr. Porro deliberately or accidentally struck Mr. Merlonghi's motorcycle given the other undisputed facts. Because Mr. Porro was not traveling to a work assignment and had engaged Mr. Merlonghi by swerving back and forth in a taunting match, Mr. Porro was not acting within the scope of his employment—even if he was driving a government vehicle and was on call. Id. at 855.

As in Clickner, Mr. Porro's actions here do not "tip the balance to bring [his] conduct within the scope of employment." Id. at 856 (alteration added). Clickner set the boundary for when an employee acts outside the scope of his employment while

_____

[3] Mr. Merlonghi does not dispute that he and Mr. Porro were swerving back and forth during their argument. According to Mr. Merlonghi's brief, "Witnesses had observed the two vehicles interacting with each other and, at times, swerving back and forth." Appellant's Br. 5-6.

-12-

traveling to and from work.  Id.  As the three scope-of-employment factors demonstrate, Mr. Porro crossed that boundary here.  First, engaging in a car chase while driving home from work is not the type of conduct that OEE hired Mr. Porro to perform.  See id. at 855.  He was hired to investigate export crimes by using his computer-forensics skills.  Moreover, he was authorized to drive a government car to facilitate travel to such investigations.  This employment did not grant him the authority to endanger the public by unholstering his gun, making threatening gestures, and driving the vehicle in a dangerous manner.

Second, Mr. Porro's accident did not occur within "authorized time and space limits" because he was not at work, responding to an emergency, or driving to a work assignment--even if he was on call.  Id.  Massachusetts decisional law draws a distinction between on-call employees who are responding to a call and those who are simply commuting to and from work.  In contrast to a commuting employee, "[a]n employee who is traveling to work after being summoned by his or her employer could be acting within the scope of employment if additional facts support such a finding."  Id. at 855 n.6.

Mr. Merlonghi argues that the collision was within the "space limits" of Mr. Porro's employment because his jurisdiction spanned the entire United States.  However, the record establishes that the Boston OEE office had responsibility over investigations

-13-

in the six New England states, not over investigations spanning the whole country. More importantly, Mr. Porro's actions did not occur within the Boston office or at a location to which he was dispatched for an assignment. The fact that he was driving within New England, and thus within his office's jurisdiction, is not nearly as relevant as the fact that OEE did not direct Mr. Porro to drive to a location placing him on Summer Street.

Third, Mr. Porro was not "motivated . . . by a purpose to serve the employer." Id. at 855. Mr. Porro's argument with Mr. Merlonghi and the back-and-forth swerving leading to the altercation had nothing to do with an OEE assignment. His conduct related to personal travel and a personal confrontation.

The welter of factors as properly organized here establish that Mr. Porro was pursuing his own agenda and not OEE's. Therefore, we conclude that he was acting outside the scope of his employment and that the district court properly dismissed Mr. Merlonghi's complaint for lack of subject-matter jurisdiction. Clearly, Mr. Porro was not employed to create confrontational altercations with private citizens while driving home from work. Because we conclude that Mr. Porro was acting outside the scope of his employment under Massachusetts's three-factor test, we need not reach the district court's alternative ruling that he was reckless.

We emphasize that a court must base its decision on the facts of each case when considering the three factors of

Massachusetts's scope-of-employment test. See id.; Wang Labs., at 1166-67. Mr. Merlonghi attempts to frame the issue as whether a federal employee acts within the scope of his employment when he negligently causes an accident while commuting from work in a government vehicle. That is not the issue before this court. The undisputed facts of this case show that Mr. Porro was not merely commuting. Viewing the facts in Mr. Merlonghi's favor, Mr. Porro acted negligently after engaging Mr. Merlonghi in a car chase with an unholstered gun. To resolve this case, therefore, we need not decide whether a federal employee acts within the scope of his employment when he negligently causes an accident while simply commuting to or from work in a government vehicle.

Mr. Merlonghi further argues that in Massachusetts "work to home travel is within the scope of employment if required or directed by the employer." Appellant's Br. 16. In support, he cites Kelly v. Middlesex Corp., 616 N.E.2d 473 (Mass. App. Ct. 1993). Mr. Merlonghi misunderstands how Kelly applies to this case. In Kelly, the court recognized the basic "going and coming" rule, but added that the rule does not apply in workers' compensation cases "when the purpose of travel between the place of residence and place of business is a mission to further the purposes of the employer, such as when an employee is directed to come to a particular company meeting." Kelly, 616 N.E.2d at 475. Kelly accurately states Massachusetts law for workers' compensation

-15-

cases, but that law does not apply in this case. Kelly involved workers' compensation, not respondeat superior. The SJC recently explained that "[i]n Kelly . . ., the court's interpretation of the 'going and coming' rule was shaped by its reliance on workers' compensation law. As we have stated, tort liability under the doctrine of respondeat superior is viewed differently from an injured employee's entitlement to benefits under the workers' compensation act." Lev, 929 N.E.2d at 309 n.6. Even if this were a workers' compensation case, the exception from Kelly would not apply to Mr. Porro. He simply was not on "a mission to further the purposes of" OEE. Kelly, 616 N.E.2d at 475.

Mr. Merlonghi also cites 31 U.S.C. § 1344 and other regulations to argue that Mr. Porro's actions must be within the scope of his employment because OEE determined that it was "essential" for Mr. Porro to drive a government vehicle to and from work. Section 1344, however, is an appropriations statute that grants funding for the "maintenance, operation, or repair of any passenger carrier only to the extent that such carrier is used to provide transportation for official purposes." The statute defines "transportation of an official purpose" in part to include transportation between residence and work that is "essential for the safe and efficient performance of intelligence, counterintelligence, protective services, or criminal law enforcement duties." 31 U.S.C. § 1344(a)(2)(B). The fact that OEE

-16-

found it essential for Mr. Porro to drive a government vehicle to perform his investigative duties does not mean that he was acting within the scope of his employment. The federal government's authorization to drive a government vehicle is not an authorization to pursue a personal argument in that vehicle with gun in hand.

Finally, Mr. Merlonghi relies on Kashin v. United States, 457 F.3d 1033 (9th Cir. 2006), and Borrego v. United States, 790 F.2d 5 (1st Cir. 1986), to support his claim that Mr. Porro was acting within the scope of his employment because federal statutes and regulations govern the funding of his government vehicle. Kashin involved a consular general in Russia who was involved in a car accident while driving from work to the gym, 457 F.3d at 1035, and Borrego involved a U.S. Department of Agriculture employee who was involved in an accident while driving from home to work in a government vehicle, 790 F.2d at 5-6. These cases involved simple acts of negligence while commuting to or from work. In contrast, Mr. Porro's heated exchange with Mr. Merlonghi and his risky back-and-forth driving extends his conduct beyond that of merely commuting in a government vehicle. Mr. Porro's conduct falls into a different category of Massachusetts law. He engaged another motorist in a personal argument and thereby pursued "his own agenda." Clickner, 663 N.E.2d at 856.

**III.**

For the foregoing reasons, we hold that Mr. Porro was not acting within the scope of his employment when he crashed into Mr. Merlonghi during a car chase. Because Mr. Porro was not acting within the scope of his employment, the district court lacked subject-matter jurisdiction over Mr. Merlonghi's claim under 28 U.S.C. § 1346(b)(1) and properly dismissed the case for lack of jurisdiction. The judgment is **AFFIRMED**.