CHARLES LEV vs. BEVERLY ENTERPRISES-MASSACHUSETTS,
INC., & others.[1]

Middlesex. March 1, 2010. - July 7, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Alcoholic Liquors,* Motor vehicle, Liability of host. *Negligence,* Alcoholic
liquors, Motor vehicle, Employer, Social host, Duty to prevent harm. *Motor Vehicle,* Agency, Operating under the influence. *Agency,* Scope of
authority or employment.

In a civil action for damages caused when an employee of the defendant struck
the plaintiff, a pedestrian, with his automobile after consuming alcohol during a meeting with his supervisor at a restaurant following the end of his
shift, the judge properly granted summary judgment in favor of the defendant on the plaintiff's vicarious liability claim, where, even assuming that the
employee was acting within the scope of his employment during the time he
was meeting with his supervisor at the restaurant, that scope of employment
ended when the employee left the restaurant to travel home. [237-239]
In a civil action for damages caused when an employee of the defendant
struck the plaintiff, a pedestrian, with his automobile after consuming
alcohol during a meeting with his supervisor at a restaurant following the
end of his shift, the defendant employer owed no duty of care to the
plaintiff as a member of the general public under the theory of employer-
host liability, where the supervisor did not provide or serve the employee
with the alcoholic beverages he consumed at the restaurant [239-242];
further, the defendant employer owed no duty of care to the plaintiff under
a traditional theory of negligence, i.e., that the defendant's "special relationship" with the employee and concomitant ability to control the employee's
actions warranted the imposition of such a duty of care, where, in the
circumstances presented, there could be no reasonable expectation that the
employer should take affirmative action to protect all potential plaintiffs
from an employee's misbehavior and anticipate harm to such plaintiffs
from a failure to do so [242-244]; finally, the defendant's employee policy
on substance, drug, and alcohol abuse did not impose a duty of care on the
supervisor, for the plaintiff's benefit, to prohibit the employee from consuming alcohol at the restaurant, such that the supervisor's failure to enforce
the policy constituted negligence on the part of the employer, where, given
that the defendant owed no common-law duty of care to the plaintiff based
on employer-host liability or on a "special relationship" between the
defendant and the plaintiff, and given that the policy was not designed for
the protection of the public at large, no duty of care could flow from the
policy and create a cause of action in negligence [244-247].

[1]John Ahern, Ellen Ahern, and South Pacific, Inc., doing business as South
Pacific Chinese Restaurant.

CIVIL ACTION commenced in the Superior Court Department on August 16, 2006.

The case was heard by *Christine M. McEvoy*, J., on a motion for summary judgment, and entry of separate and final judgment was ordered by *Merita A. Hopkins*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Marc Diller* (*B. Ian Julier* with him) for the plaintiff.

*Joseph M. Desmond* (*David Viens* with him) for Beverly Enterprises-Massachusetts, Inc.

SPINA, J. The plaintiff, Charles Lev, commenced this action against, among others, Beverly Enterprises-Massachusetts, Inc. (Beverly), seeking damages for injuries he sustained as a result of being struck by a motor vehicle driven by John Ahern, an employee of Beverly, who was intoxicated at the time of the accident. Beverly filed a motion for summary judgment pursuant to Mass. R. Civ. P. 56, as amended, 436 Mass. 1404 (2002), with respect to counts II and III of the amended complaint. Count II alleged that Beverly was vicariously liable for Ahern's negligence based on their employment relationship, and count III alleged traditional negligence on the part of Beverly. A judge in the Superior Court allowed the summary judgment motion, and a divided panel of the Appeals Court affirmed. See *Lev* v. *Beverly Enters.-Mass., Inc.*, 74 Mass. App. Ct. 413 (2009). We granted the plaintiff's application for further appellate review, and now affirm.

1. *Background.* We summarize the material facts in the light most favorable to the plaintiff, the nonmoving party. See *Foster* v. *Group Health Inc.*, 444 Mass. 668, 672 (2005). Ahern was employed as a chef at the Heathwood Nursing and Rehabilitation Center (Heathwood) in Chestnut Hill, a facility owned and operated by Beverly. On March 11, 2004, the date of the accident, Ahern began his shift at Heathwood around 7 A.M. At approximately 5:30 P.M., Ahern left Heathwood[2] and drove to South Pacific Chinese Restaurant (South Pacific) in Newton where he was joined by Lynda Pacitti, a dietary services manager

---

[2]Beverly's "punch detail report" showed that on March 11, 2004, Ahern punched in for work at 7:01 A.M., punched out at 11:58 A.M., punched back in at 12:38 P.M., and then punched out for the day at 5:32 P.M.

at Heathwood and his direct supervisor. The two had known each other for over twenty-five years as colleagues and friends. While at South Pacific, Ahern and Pacitti sat in the lounge area and discussed an upcoming Department of Public Health survey. They reviewed menus, which Pacitti had with her, and talked about sanitation issues.[3] While at South Pacific, Ahern purchased two drinks and consumed at least one drink and one-half of the other — vodka and soda water.

At approximately 7 P.M., Ahern left South Pacific in his personal vehicle to go home. While driving through the intersection of Washington Street and the on-ramp to Route 128 north in Newton, Ahern's vehicle struck the plaintiff as he was crossing the street. The plaintiff suffered severe and debilitating injuries. Ahern was arrested and eventually convicted of operating a motor vehicle while under the influence of intoxicating liquor, in violation of G. L. c. 90, § 24 (1) (a) (1).

In count II of his amended complaint, the plaintiff alleged that Ahern was acting within the scope of his employment when he became intoxicated at South Pacific and then negligently operated his motor vehicle, causing it to strike and injure the plaintiff. The plaintiff further alleged, in count III of his complaint, that Beverly, through its employees (i.e., Pacitti), controlled and monitored Ahern's consumption of alcohol; knew or should have known that he was intoxicated; and permitted him to operate his motor vehicle while in that condition, resulting in the plaintiff's severe injuries.

In her memorandum of decision and order, dated June 27, 2007, allowing Beverly's motion for summary judgment, the judge concluded that, with respect to count II, Ahern's actions were not within the scope of his employment, and that, even if his meeting with Pacitti at South Pacific could be considered work related, the liability of an employer does not extend to acts committed by employees when traveling to and from work. As such, the judge continued, Ahern was no longer acting within

---

[3]The essential job functions of a chef employed by Beverly include: preparing and serving food in accordance with planned menus; directing and assisting with the cleaning and sanitizing of work areas and equipment; ensuring proper storage of food and supplies; adhering to sanitary, safety, and infection control policies and procedures; reviewing menus prior to the preparation of food; and coordinating dietary services with other departments.

the scope of his employment when he entered his vehicle to drive home. The judge further concluded that, with respect to count III, Beverly, at most, could be held to the duty of a social host. However, in this case, the judge continued, there was no basis for imposing liability on Beverly where South Pacific alone controlled the manner in which alcohol was served to Ahern. The plaintiff subsequently filed a motion for reconsideration, which the judge denied. A separate and final judgment entered for Beverly on October 17, 2007, and counts II and III of the plaintiff's amended complaint were dismissed.[4]

The Appeals Court affirmed, concluding that Beverly was not liable to the plaintiff either under a theory of respondeat superior or under principles of employer-host liability. See *Lev* v. *Beverly Enters.-Mass., Inc.*, *supra* at 414-422.

2. *Standard of review.* "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law." *Cargill, Inc.* v. *Beaver Coal & Oil Co.*, 424 Mass. 356, 358 (1997). See Mass. R. Civ. P. 56 (c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. See *Pederson* v. *Time, Inc.*, 404 Mass. 14, 17 (1989). Any doubts as to the existence of a genuine issue of material fact are to be resolved against the party moving for summary judgment. See *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 371, cert. denied, 459 U.S. 970 (1982).

3. *Liability based on respondeat superior.* The plaintiff first contends that Ahern was acting within the scope of his employment when he became intoxicated at South Pacific, and that Ahern was still acting within the scope of his employment when he operated his motor vehicle in such a manner as to cause the plaintiff's accident and injuries. Thus, in the plaintiff's

---

[4]On October 2, 2006, Beverly filed a third-party complaint naming South Pacific as a third-party defendant, and asserting claims for contribution and common-law indemnification. South Pacific filed an answer and a cross claim against Beverly for contribution. On July 19, 2007, Beverly filed a motion to dismiss the cross claim, which was allowed. According to Beverly, the plaintiff's case against John Ahern and his wife, Ellen Ahern, has been stayed in the Superior Court pending the outcome of the present appeal, and the plaintiff has settled his claim against South Pacific for $365,000.

view, Beverly is vicariously liable for Ahern's negligence. We disagree.

Under the doctrine of respondeat superior, "an employer, or master, should be held vicariously liable for the torts of its employee, or servant, committed within the scope of employment." *Dias* v. *Brigham Med. Assocs., Inc.*, 438 Mass. 317, 319-320 (2002). We have stated that "[t]he 'conduct of an agent is within the scope of employment if it is of the kind he is employed to perform, . . . if it occurs substantially within the authorized time and space limits, . . . and if it is motivated, at least in part, by a purpose to serve the employer' " (citations omitted). *Mosko* v. *Raytheon Co.*, 416 Mass. 395, 399 (1993) (*Mosko*), quoting *Wang Lab., Inc.* v. *Business Incentives, Inc.*, 398 Mass. 854, 859 (1986). See Restatement (Second) of Agency § 228 (1958). Generally speaking, travel to and from home to a place of employment is not considered to be within the scope of employment (colloquially referred to as the "going and coming" rule). See *Mosko, supra*. See also Restatement (Second) of Agency, *supra* at § 233 comment a, at 516 (time of service "begins only when the master has a right to direct the method by which the servant is to perform the work, and terminates when the master has no longer a right to control it"). Cf. *Wormstead* v. *Town Manager of Saugus*, 366 Mass. 659, 666-667 (1975) (police officer injured during lunch break, a time when officers continue to perform police functions in community, included in class of "traveling workers" not barred from receiving compensation under G. L. c. 41, § 111F, by "going and coming" rule).[5]

Here, assuming for purposes of Beverly's summary judgment

---

[5]In *Clickner* v. *Lowell*, 422 Mass. 539, 543 n.4 (1996), we noted that *Wormstead* v. *Town Manager of Saugus*, 366 Mass. 659, 667 (1975), which established the exception to the "going and coming" rule for traveling workers, "involved worker's compensation analysis, not imputed tort liability under respondeat superior principles." More recently, we have stated that "[t]he 'course of employment' test used in workers' compensation cases is much broader than the 'scope of employment' test applied to determine whether a master is liable for a servant's negligent acts." *Fredette* v. *Simpson*, 440 Mass. 263, 266 (2003). See *Mulford* v. *Mangano*, 418 Mass. 407, 410 (1994) (rejecting more narrow "scope of employment" test and using "course of employment" standard when dealing with coemployee immunity claims under workers' compensation act).

motion that Ahern was acting within the scope of his employment during the time he was meeting with Pacitti at South Pacific to discuss the Department of Public Health survey and review menus, we conclude that the scope of his employment ended when he left South Pacific to travel home. At that juncture, Ahern was no longer acting on behalf of or under the direction or control of Beverly. He simply was driving home from a meeting with his supervisor, conduct that, substantively, was no different than traveling home after the completion of his shift at Heathwood. Put another way, Ahern's homeward-bound trip from South Pacific was not an essential part of his employer's mission.[6] Because Ahern was not acting within the scope of his employment at the time he struck and injured the plaintiff, his purportedly negligent actions could not be imputed to Beverly under a theory of respondeat superior.[7]

4. *Employer-host liability and traditional negligence.* To

---

[6] In *Kelly* v. *Middlesex Corp.,* 35 Mass. App. Ct. 30, 32 (1993), the court recognized the well-settled rule that "travel back and forth from home to a fixed place of employment is not ordinarily regarded as incident to employment," but further stated that "[t]he limiting case occurs when the purpose of travel between the place of residence and place of business is a mission to further the purposes of the employer, such as when an employee is directed to come to a particular company meeting, as in *Caron's Case,* 351 Mass. 406, 409-410 (1966)." In *Caron's Case, supra* at 407, 409-410, this court concluded that a widow and her three minor children were entitled to workers' compensation benefits under G. L. c. 152, § 26, where her husband died in a car accident while driving home from a company dinner meeting that he was required to attend and that the company paid for entirely (including food, drinks, and transportation expenses). There, the husband was considered to be an "employee" of the company at the time of the collision, and his death arose "out of an ordinary risk of the street while actually engaged, with his employer's authorization, in the business affairs or undertakings of his employer." *Id.* at 408, quoting G. L. c. 152, § 26. In *Kelly* v. *Middlesex Corp., supra,* the court's interpretation of the "going and coming" rule was shaped by its reliance on workers' compensation law. As we have stated, tort liability under the doctrine of respondeat superior is viewed differently from an injured employee's entitlement to benefits under the workers' compensation act. See note 5, *supra.*

[7] In his brief, the plaintiff also argues that Beverly was vicariously liable for the negligence of Pacitti in permitting Ahern to consume alcoholic beverages during their meeting at South Pacific, and in allowing him to drive home in an allegedly intoxicated state. See *Lev* v. *Beverly Enters.-Mass., Inc.,* 74 Mass. App. Ct. 413, 424-425 (2009) (McHugh, J., dissenting). In count II of his amended complaint, the plaintiff's claim against Beverly under a theory of respondeat superior pertains only to the purported negligence of Ahern, not that

prevail on a claim of negligence, "a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." *Jupin* v. *Kask*, 447 Mass. 141, 146 (2006). The existence of a duty of care is a question of law and, therefore, is an appropriate subject for summary judgment. See *id.* If a defendant does not owe a legal duty to a plaintiff, then there can be no actionable negligence. See *Remy* v. *MacDonald*, 440 Mass. 675, 677 (2004). See also J.R. Nolan & L.J. Sartorio, Tort Law § 11.3 (3d ed. 2005). As a preliminary matter, the focus of the plaintiff's argument is on traditional negligence principles, not on employer-host liability. See *Commerce Ins. Co.* v. *Ultimate Livery Serv., Inc.*, 452 Mass. 639, 645 (2008) (social host liability claims distinct from negligence claims). As such, we discuss this latter theory briefly, given that it was a significant part of the decisions of the Superior Court and the Appeals Court, before considering whether Beverly owed a duty of care to the plaintiff under traditional theories of negligence.[8]

In *McGuiggan* v. *New England Tel. & Tel. Co.*, 398 Mass.

___

of Pacitti. Similarly, in his memorandum of law in opposition to Beverly's motion for summary judgment, the plaintiff analyzes count II only in the context of Ahern's negligence — how Ahern was performing tasks for which he was employed, how Ahern's conduct occurred within the authorized space and time confines of his employment, and how Ahern's conduct was motivated by a purpose to serve Beverly. Accordingly, the issue of Beverly's liability for Pacitti's alleged negligence under a theory of respondeat superior has been waived. Even had it not been waived, neither Ahern nor Pacitti injured the plaintiff during the course of their employment, so Beverly would not be liable for any purported negligence on the part of Pacitti under a theory of respondeat superior.

[8]Beverly has alleged that the plaintiff's negligence claim fails as a matter of law because the plaintiff did not file an affidavit pursuant to G. L. c. 231, § 60J, which states, in pertinent part: "Every action for negligence in the *distribution, sale or serving* of alcoholic beverages to a minor or to an intoxicated person shall be commenced in the superior court department and shall proceed according to the Massachusetts Rules of Civil Procedure unless otherwise provided for by this section. The plaintiff shall file, together with his complaint, or at such later time not to exceed ninety days thereafter, an affidavit setting forth sufficient facts to raise a legitimate question of liability appropriate for judicial inquiry" (emphasis added). We agree with the Appeals Court that Beverly's contention has no merit. See *Lev* v. *Beverly Enters.-Mass., Inc., supra* at 422 n.9. This statutory provision, known as the "dram-shop act," is directed at negligence actions against taverns and similar establish-

152, 162 (1986), this court indicated that, in addition to the liability of a commercial vendor of alcoholic beverages, "[w]e would recognize a social host's liability to a person injured by an intoxicated guest's negligent operation of a motor vehicle where a social host who knew or should have known that his guest was drunk, nevertheless gave him or permitted him to take an alcoholic drink and thereafter, because of his intoxication, the guest negligently operated a motor vehicle causing the third person's injury." The duty of care owed by a social host is limited, however, to those occasions when the host controls the alcohol that is provided to guests. See *Cremins* v. *Clancy*, 415 Mass. 289, 293-294 (1993) (social host who has not provided liquor owes no duty of reasonable care to protect travelers on highway from intoxicated guest); *Ulwick* v. *DeChristopher*, 411 Mass. 401, 406-407 (1991). We have declined to adopt a separate standard of care for an employer-host, concluding that "the possible liability of an employer-host should be tested by existing standards governing a social host's liability." *Mosko, supra* at 397.[9]

Here, Pacitti did not provide or serve Ahern with the alcoholic beverages that he consumed. The alcoholic beverages consumed by Ahern were ordered by Ahern, including at least one drink that he ordered before Pacitti arrived at South Pacific, were served by a bartender, and were paid for by Ahern. In accordance with the principles articulated in *Kelly* v. *Avon Tape, Inc.*, 417

---

ments, and is designed to "promote the availability of liability insurance by establishing mechanisms whereby the incidence of frivolous claims might be reduced." *Croteau* v. *Swansea Lounge, Inc.*, 402 Mass. 419, 422 (1988). See *Gottlin* v. *Herzig*, 40 Mass. App. Ct. 163, 170 n.13 (1996). General Laws c. 231, § 60J, is not applicable to the facts of this case.

[9]In *Mosko* v. *Raytheon Co.*, 416 Mass. 395, 396 (1993), an employee became intoxicated at a Christmas party that was organized by the employer (Raytheon) but held at a local restaurant with a cash bar. This court held that Raytheon was not liable for injuries to a third party caused by the negligent driving of its employee because "Raytheon did not furnish or pay for the alcohol consumed by its employees, and there [was] nothing to show that Raytheon had any control over the manner in which the employees of [the restaurant] performed their bartending duties." *Id.* at 403. See *Commerce Ins. Co.* v. *Ultimate Livery Serv., Inc.*, 452 Mass. 639, 646 (2008) (where no evidence that private carrier or its driver provided or served alcohol to passenger who became intoxicated and killed third party in subsequent automobile accident, judge correctly granted summary judgment in favor of carrier and driver on social host liability claims).

Mass. 587, 588-589 (1994),[10] we conclude that Beverly owed no duty to the plaintiff, a member of the general public, under an employer-host theory of liability, even though Pacitti knew that Ahern consumed alcoholic beverages while at South Pacific, made no attempt to stop his drinking, and, perhaps, should have known that Ahern left the premises of South Pacific in an intoxicated state. Our precedent has firmly established that employer-host liability is predicated on control of the alcohol, not control of the person who consumes it. That principle is dispositive here.

We turn now to consideration whether Beverly owed a duty of care to the plaintiff under traditional theories of negligence. The plaintiff contends that an employer's "special relationship" with its employees, and the concomitant ability to control their actions, warranted imposition of a duty on Beverly to take reasonable steps to prevent Ahern from consuming alcoholic beverages while at South Pacific and from driving home while intoxicated, even where Beverly neither furnished nor controlled the alcohol. We disagree.

As a general principle of tort law, "[t]here is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another . . . ." Restatement (Second) of Torts § 315 (1965). See *Leavitt* v. *Brockton Hosp., Inc.*, 454 Mass. 37, 40-41 (2009). However, we have recognized such a duty, albeit in narrowly prescribed circumstances, where a special relationship exists between the person posing the risk and the one who can prevent the harm. See Restatement (Second) of Torts, *supra* at § 315 (a); W.L. Prosser & W.P. Keeton, Torts

---

[10]In *Kelly* v. *Avon Tape, Inc.*, 417 Mass. 587, 588 (1994), the employer did not serve or supply alcoholic beverages to its employee (Rodriguez) but it did provide a refrigerator on its premises for the benefit of its employees and was aware that its employees stored beer in it. The employer knew that Rodriguez consumed beer at work on the day of the motor vehicle accident but made no attempt to stop his drinking. See *id.* In addition, the employer knew or should have known that Rodriguez left its premises in an intoxicated state. See *id.* Thereafter, Rodriguez, while negligently driving home on the highway, struck and injured the plaintiffs. See *id.* Relying on *Mosko* v. *Raytheon Co., supra*, this court held that because the employer did not furnish alcohol to Rodriguez, the employer owed no duty of care to members of the general public to protect them from the consequences of Rodriguez's intoxication. See *Kelly* v. *Avon Tape, Inc., supra* at 589.

§ 56, at 383-385 (5th ed. 1984). Cf. *Jean W.* v. *Commonwealth,* 414 Mass. 496, 513-514 (1993) (Liacos, C.J., concurring) (Department of Correction and parole board may have been in special relationship with erroneously released prisoner that could give rise to duty to control him for benefit of foreseeable victims). Foremost among the considerations in ascertaining the existence of a special relationship that would give rise to a duty of care is "whether a defendant reasonably could foresee that he would be expected to take affirmative action to protect the plaintiff and could anticipate harm to the plaintiff from the failure to do so." *Irwin* v. *Ware,* 392 Mass. 745, 756 (1984) (town liable to injured motorist where police officer negligently failed to remove intoxicated driver from highway). See *Luoni* v. *Berube,* 431 Mass. 729, 732 (2000) ("A special relationship, when derived from common law, is predicated on a plaintiff's reasonable expectations and reliance that a defendant will antici- pate harmful acts of third persons and take appropriate measures to protect the plaintiff from harm"). In the factual circumstances presented here, there could be no such reasonable expectation. Where two employees meet at a restaurant to socialize and discuss work-related matters, an employer cannot be expected to foresee that it should take affirmative action to protect all potential plain- tiffs from an employee's misbehavior, and could not anticipate harm to such plaintiffs from a failure to do so.

Neither the plaintiff's reliance on the Restatement (Second) of Torts, nor his reliance on the Restatement (Third) of Torts, persuades us otherwise. The Restatement (Second) of Torts §§ 316-320 (1965) enumerates several categories of special relationships — parent and dependent children, master and servant, possessor of land or chattels and licensee, one in charge of a person with dangerous propensities, and one having cus- tody over another — none of which is applicable here.[11] The Restatement (Third) of Torts: Liability for Physical Harm § 41 (Proposed Final Draft No. 1, 2005),[12] specifically includes the relationship between an employer and employee as a "special

[11]The duty of a master to control his servant arises in specified circumstances not present in this case. See Restatement (Second) of Torts § 317 & comment a (1965).

[12]The American Law Institute's Council and its membership have given final approval to the substance of Restatement (Third) of Torts: Liability for

relationship" that potentially would give rise to a duty of care to the plaintiff when "the employment facilitates the employee's causing harm to third parties." *Id.* at § 41(b)(3). "Employment facilitates harm to others when the employment provides the employee access to physical locations, such as the place of employment, or to instrumentalities, such as a police officer carrying a concealed weapon while off duty, or other means by which to cause harm that would otherwise not be available to the employee." *Id.* at § 41 comment e. The facts here, when viewed in the light most favorable to the plaintiff, are not of the sort that would be encompassed by § 41. Ahern's employment with Beverly did not facilitate his ability to harm the plaintiff. Therefore, there was no special relationship between Beverly and Ahern that gave rise to a duty of care for the benefit of the plaintiff.

Finally, we consider the effect of Beverly's substance, drug, and alcohol abuse policy, which prohibits, among other things, the consumption of alcoholic beverages by its "associates," on the plaintiff's negligence claim. At issue is whether the policy imposed a duty of care on Pacitti, for the benefit of the plaintiff, to prohibit Ahern from consuming any alcoholic beverages while they were at South Pacific, and whether her failure to enforce the policy constituted negligence on the part of Beverly. We conclude that there was no such duty of care and, therefore, no actionable negligence.

Beverly's substance, drug, and alcohol abuse policy, set forth in its Human Resources Management Policy and Procedures Manual (effective date May 1, 1998), provides, in relevant part, as follows:

> "It is Beverly's policy to provide a safe environment that promotes the welfare of its residents, associates and visitors. Substance, drug, and alcohol abuse threaten the quality of patient care and the safety of our residents and associates. Beverly, therefore, will implement and maintain a drug and alcohol free workplace policy at each of its

Physical Harm § 41 (Proposed Final Draft No. 1, 2005), with the exception of certain comments to §§ 27 and 28 not at issue here. See *Leavitt* v. *Brockton Hosp., Inc.*, 454 Mass. 37, 41-42 n.10 (2009). See also Press Release, American Law Institute, Agenda Set for the American Law Institute's 86th Annual Meeting in Washington, D.C. (April 16, 2009).

facilities that meets the requirements of The Drug and Alcohol Free Workplace Act of 1988. . . .

"*Alcohol.* Associates are prohibited from possessing, consuming, selling, distributing, or being under the influence of alcohol on company premises or while conducting company business off company premises. Occasionally, alcohol may be served at company-sponsored social events. Alcohol may be served at such events only with the prior approval of the Executive Director. Associates are expected to remain responsible and professional at company social events."

An associate is subject to discipline, up to and including discharge, for any violation of the substance, drug, and alcohol abuse policy.

In Massachusetts, "[a]n employee's violation of his employer's rules, intended to protect the safety of third persons, is evidence of the employee's negligence, for which the employer may be held liable." *Commonwealth* v. *Angelo Todesca Corp.*, 446 Mass. 128, 138 (2006). See *Stevens* v. *Boston Elevated Ry.*, 184 Mass. 476, 479-480 (1904) (employer's rules or policies are evidence of what employer thinks is necessary to protect safety of others). However, such a violation "does not create a duty in a plaintiff where one does not exist independently." *Goulart* v. *Canton Hous. Auth.*, 57 Mass. App. Ct. 440, 444 (2003) (violation of written snow removal policy does not provide independent basis for liability). See *Field* v. *Gowdy*, 199 Mass. 568, 573 (1908) (existence of nuisance cannot be predicated solely on violation of municipal ordinance where no duty exists apart from ordinance). Cf. *Ulwick* v. *DeChristopher*, 411 Mass. 401, 408 (1991) (violation of statute with criminal penalties does not provide independent ground for civil liability). It is only where a duty of care exists that the violation of a statute, ordinance, regulation, or policy is relevant because it constitutes some evidence of a defendant's negligence. See *Bennett* v. *Eagle Brook Country Store, Inc.*, 408 Mass. 355, 358-359 (1990). The violation does not constitute negligence per se. See *Ulwick* v. *DeChristopher, supra.*

As we have stated, the general rule under our common law is

that there is no duty to control another person's conduct to prevent that person from causing harm to a third party. See *Leavitt* v. *Brockton Hosp., Inc.*, 454 Mass. 37, 40-41 (2009); Restatement (Second) of Torts, *supra* at § 315. In the circumstances of this case, we have concluded that Beverly did not owe a common-law duty of care to the plaintiff based either on employer-host liability or on a "special relationship" between Beverly and Ahern. As such, a duty of care did not flow from Beverly's substance, drug, and alcohol abuse policy and did not create a cause of action in negligence. Had we concluded that Beverly did owe a duty of care to the plaintiff, then Pacitti's failure strictly to enforce Beverly's policy would constitute evidence of negligence by Pacitti and, therefore, Beverly.

In addition, no evidence has been presented in the summary judgment materials to suggest that Beverly's substance, drug, and alcohol abuse policy was intended to protect a person in the plaintiff's position (a member of the general public wholly unconnected with Beverly). Rather, the policy is intended to foster a "safe environment that promotes the welfare of [Beverly's] residents, associates and visitors" and to preserve "the quality of patient care." It is designed for the protection of Beverly's residents, associates and visitors, whether on company premises or, in the case of associates, while conducting company business off premises. Associates attending to company business off premises are unable to address the needs and promote the welfare of either Beverly or its residents when intoxicated. The substance, drug, and alcohol abuse policy simply is not designed for the protection of the public at large. Accordingly, Beverly's policy may not serve as the basis for the plaintiff's negligence claim. See, e.g., *Cimino* v. *Milford Keg, Inc.*, 385 Mass. 323, 327-328 (1982) (statute prohibiting sale of liquor to intoxicated persons intended to protect accident victims); *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 26-27, 29 (1979) (workers' compensation statute intended to protect employees); *Perry* v. *Medeiros*, 369 Mass. 836, 840-841 & n.4 (1976) (building code intended to protect tenants in common areas). Imposing a potentially onerous burden on employers to monitor the off-premises conduct of all of their employees to ensure that no

harm comes to third parties is a duty that we have not previously recognized, and do not recognize now.

*Judgment affirmed.*